```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION

THE FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
First Priority Bank, Bradenton,
Florida,

          Plaintiff,
v.                                 Case No. 8:11-cv-2831-T-33MAP

ICARD, MERRILL, CULLIS, TIMM,
FUREN & GINSBURG, P.A., and
ROBERT MESSICK, ESQ.,

          Defendants.
_____/
```

**ORDER**

This matter comes before the Court pursuant to Defendants' October 8, 2012, Motion for Summary Judgment. (Doc. # 20). The FDIC responded to the Motion for Summary Judgment on October 22, 2012 (Doc. # 23), and Defendants filed a Reply (Doc. # 27) on November 5, 2012. The Court denies the Motion as follows.

**I.   Background**

   **A.   Brivik Plans a Subdivision**

Mark Brivik and several co-investors formed River Meadows Development, LLC for the purpose of acquiring various parcels of property to be developed in Sarasota, Florida. (6/19/2012 Messick Dep. Doc. # 22-5 at 39-42). Parcel 1 consisted of 17 acres, Parcel 2 consisted of 4.76 acres, Parcels 3 and 5 were

comprised of two narrow strips of land connecting Parcels 1 and 2, and Parcel 4 was comprised of 25 acres of premium waterfront property. (Doc. # 20-1 at 1).[1]

Robert Messick, Esq., a partner at the Icard firm, testified that he represented Brivik and assisted Brivik in acquiring Parcels 1, 2, 3, and 5. (6/19/2012 Messick Dep. Doc. # 22-5 at 39, 140).[2] Despite persistent negotiations, Messick was unable to secure Parcel 4, the 25 acre waterfront parcel. (7/9/2012 Putnam Dep. Doc. # 22-2 at 162; 5/18/2009 Messick Dep. Doc. # 24-2 at 144-145, 149). Messick attempted to secure an option for Parcel 4, but the owners of Parcel 4 refused. (Id.) Instead, the owners of Parcel 4 provided Brivik with a limited right of first refusal. (Id.)

Messick and the Icard firm also represented an entity known as U.S. Lending in documenting extension agreements with

---

[1] Throughout the litigation, the parties have interchanged their description of Parcels 4 and 5. At some points, the parties have referred to the 25 waterfront acres as Parcel 4 and at some points, they have referred to such parcel as Parcel 5. This Court has referred to the 25 acre waterfront parcel as Parcel 4, consistent with the relevant loan documents at issue.

[2] In his sworn responses to The FDIC's request for admissions, Messick "denies that he represented Mark Brivik in connection with the acquisition of Parcels I -IV." (Doc. # 24-5 at 22). He stated the opposite during his June 19, 2012, deposition.

2

Brivik on the $4.3 million loan which Brivik owed to U.S. Lending that was secured by one of the Parcels at issue and Brivik's personal guarantee. (6/19/2012 Messick Dep. Doc. # 22-5 at 45-47). The extensions of Brivik's loan were recorded from May 2002 until November 2005. (Doc. # 23-5). The last extension expired on March 1, 2006. (Id.) Messick acknowledged that the Icard firm regularly represented U.S. Lending as well as related entities either owned or operated by Brivik. (5/18/2009 Messick Dep. Doc. # 24-2 at 32-33; Doc. # 24-5 at 3-6).

In early 2006, the Bank's prior Executive Vice President and Chief Lending Officer, Steven Putnam, met with Brivik to negotiate the terms of a loan to refinance some of the aforementioned Parcels. (7/9/2012 Putnam Dep. Doc. # 22-2 at 52-53). During the meeting, Brivik communicated to Putnam that he planned to develop the property into a residential subdivision. (Id. at 55-56). Brivik also indicated that he was working on obtaining an option to purchase the 25 waterfront acres known as Parcel 4. (Id. at 56).

On January 10, 2006, after their meeting, Putnam sent Brivik a letter containing some of the proposed loan terms. (Doc. # 23-3). In that letter, Putnam listed as "COLLATERAL" the following:

3

> First real estate mortgage encumbering a 17-acre land parcel (Parcel 1) located at 1095 Mill Creek Road; a 4.76-acre land parcel (Parcel 2) located just west of Parcel 1 and a fifty-foot land strip (Parcel 3) that connects Land Parcels 1 and 2. Assignment of all plans, permits and contracts related to the subject land parcels. **Also, assignment of the option contract to purchase an additional 25-acre parcel (Parcel 4) located just north of Parcels 1-3.**

(Id. at 3)(emphasis added). That letter also requested a "Copy of Purchase Option Contract for Parcel 4." (Id. at 4).

After River Meadows Development, LLC submitted a commercial loan application to the Bank seeking $6.3 million, the Bank's Director's Committee held a meeting to review the application. (7/9/2012 Putnam Dep. Doc. # 22-2 at 165). On February 16, 2006, that Committee, comprised of seven members, approved a $5.3 million loan to River Meadows Development, LLC with certain conditions enumerated in the Bank's Credit Approval Request form (CAR). (Id.; Doc. # 1-2). One of the conditions stated in the CAR was that the Bank receive an assignment of the "option" to purchase the 25 acre waterfront property. (Doc. # 1-2 at 2).

**B.    Messick Closes the Loan**

On February 17, 2006, the Bank requested that Messick represent it in closing the River Meadows Development, LLC loan, and Messick agreed. (7/9/2012 Putnam Dep. Doc. # 22-2

4

at 116, 118). Messick closed the loan and prepared the loan commitment letter. Messick represents that when he received the Bank's CAR, he called Putnam to advise Putnam that the option to purchase Parcel 4 did not exist. (6/19/2012 Messick Dep. Doc. # 22-5 at 75-76).[3] Putnam purportedly waived the requirement of the option. (Id.) However, Putnam testified that he does not recall waiving the requirement. (12/18/2010 Putnam Dep. Doc. # 24-1 at 43). Putnam also testified that, as a member of the seven-member Director's Committee, he would not have the authority to alter the loan terms unilaterally. (7/9/2012 Putnam Dep. Doc. # 22-2 at 30, 36, 44; Najmy Dep. Doc. # 22-1 at 102). Any change in the terms of a loan would have to be considered by the same Committee that initially approved the loan. (Id.) Nevertheless, the February 18, 2006, loan commitment letter, prepared by Messick, is silent regarding the non-existent option contained in the Bank's CAR. (Doc. # 23-7).

The depositions of three members of the Director's Committee are before the Court. Each of these three members testified that the option or lack thereof did not affect their

---

[3] In addition, Messick, or someone at the Icard firm, faxed a copy of the CAR to Brivik. (6/19/2012 Messick Dep. Doc. # 22-5 at 138-139).

decision to approve the loan. Specifically, George Najmy testified that the loan was not underwritten based upon an option contract or a purported option contract to acquire 25 acres of land. (Najmy Dep. Doc. # 22-1 at 46, 58). Alan Zirkelbach similarly testified that he placed no weight on the existence of Parcel 4 in approving the loan. (Zirkelbach Dep. Doc. # 22-4 at 20). Putnam testified that he did not ascribe any value to the 25-acre Parcel. (7/9/2012 Putnam Dep. Doc. # 22-2 at 145-146).

### C. Messick Represents the Bank and Others

During his June 19, 2012, deposition, Messick testified that, during the loan closing, he <u>only</u> represented First Priority Bank and no others. (6/19/2012 Messick Dep. Doc # 22-5 at 44). In Messick's May 18, 2009, deposition, however, Messick stated that he represented both the Bank and the borrower during the relevant loan closing. (5/18/2009 Messick Dep. Doc. # 24-2 at 21).

Messick has testified that he sought a conflict waiver from Putnam: "I told Mr. Putnam that we in fact represented River Meadows Development Corporation and that would be a conflict unless it was waived by the Bank, and did he want us to represent the Bank, acknowledging that conflict."

6

(6/19/2012 Messick Dep. Doc # 22-5 at 34).[4]  Messick also testified that he had a similar discussion with Brivik and "Brivik communicated to me orally his agreement to waive the conflict." (6/19/2012 Messick Dep. Doc # 22-5 at 36).  Putnam testified that he did not recall whether Messick discussed any conflict of interest with him.  (7/9/2012 Putnam Dep. Doc. # 22-2 at 118). Messick acknowledges and the record reflects that the Icard firm represented Brivik and U.S. Lending, but it appears that Messick did not disclose the same to Putnam.[5]

It is not clear from the record what Messick disclosed to Putnam regarding his conflict of interest, if anything. Messick has provided testimony that is at times confusing and divergent regarding who he represented and when.

### D.  **The Bank Fails and the FDIC Steps in**

In August 2007, the River Meadows Development, LLC loan went into default. (Najmy Dep. Doc. # 22-1 at 73).  The Bank

---

[4] Along the same lines, Messick admitted in response to the FDIC's interrogatories: "At or around the time that Mr. Putnam contacted me about representing First Priority in connection with the Loan, I informed Mr. Putnam that we also represented River Meadows, the Borrower.  I discussed with Mr. Putnam whether or not the documents for the Loan should be prepared by me or some other counsel." (Doc. # 24-2 at 3)

[5] Messick admitted in response to the FDIC's requests for admissions that he represented Brivik and U.S. Lending. (Doc. # 24-5 at 3-5).

subsequently failed and the FDIC was appointed as a Receiver. (7/9/2012 Putnam Dep. Doc. # 22-3 at 208). The River Meadows Development, LLC loan package and all of the FDIC's rights to the loan sold for $693,720 for a loss of $4.5 million.

On December 23, 2011, the FDIC filed suit against the Icard firm and Messick. (Doc. # 1). In count one, for legal malpractice, the FDIC alleges that Defendants (1) closed the River Meadows Development, LLC loan without obtaining an assignment of River Meadows Development, LLC's purported option to purchase Parcel 4 as required by the Bank's CAR; (2) failed to obtain a written waiver of the requirement to secure an assignment of the purported option prior to closing the loan; and (3) failed to disclose that the purported option was nothing more than a limited right of first refusal.

In count two, for breach of fiduciary duty, the FDIC asserts that Defendants (1) failed to inform the Bank that River Meadows Development, LLC never had an option to purchase Parcel 4; (2) failed to explain the legal implications of having a limited right of first refusal, as opposed to an option; (3) closed the loan without obtaining an assignment of the purported option for the Bank; (4) failed to obtain a written waiver of the requirement that the Bank receive an assignment of the purported option; and (5) failed to advise

8

the Bank of a conflict of interest.

On October 8, 2012, Defendants filed their Motion for Summary Judgment as to both Complaint counts. (Doc. # 20). The FDIC responded to the Motion for Summary Judgment on October 22, 2012 (Doc. # 23), and Defendants filed a Reply (Doc. # 27) on November 5, 2012.

## II.  **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears

the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id.

### III. Analysis

The elements of a legal malpractice claim are the attorney's employment and his neglect of a reasonable duty which proximately causes a loss to his client. Thompson v. Martin, 530 So. 2d 495 (Fla. 2d DCA 1988).  An attorney may not "neglect[] to perform the services which he agrees to perform for a client or which by implication he agrees to perform when he accepts employment." Dykema v. Godfrey, 467 So. 2d 824, 825 (Fla. 1st DCA 1985).  Similarly, the elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) resulting damages.  Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002).

The Defendants are not entitled to summary judgment as to either of the FDIC's claims.

### A. Legal Malpractice

Under the undisputed facts before the Court, a jury could find that Defendants committed legal malpractice. Specifically, regardless of Putnam, Najad, and Zirkelbach's testimony to the contrary, a jury could find that Messick negligently closed the loan without obtaining an assignment of the option as specified in the CAR.[6] The Bank documents that list "assignment of option contract" as collateral, particularly the CAR, speak for themselves.

Although Messick testified that he orally advised Putnam that the option did not exist, a jury could find that more than a phone call from counsel was required. This is especially true considering that Messick's firm (if not Messick himself) had an attorney/client relationship with both U.S. Lending and Brivik. Because U.S. Lending and Brivik stood to gain millions of dollars from the loan transaction,

---

[6] Seven individuals participated in approving the River Meadows Development, LLC loan. Testimony from three of these individuals that the Bank's CAR did not mean what it said is not dispositive of the issue. Thus, the Court need not address the parties' arguments concerning the application of the D'Oench doctrine. That doctrine, articulated in D'Oench, Dhume & Co. v. FDIC, 315 U.S. 447 (1942), generally provides that the FDIC is not bound to unofficial side agreements between the bank and its borrowers formed prior to the bank's failure. The statutory embodiment of the doctrine is set forth in 12 U.S.C. § 1823(e)(1). See also First Union Nat'l Bank of Fla. v. Hall, 123 F.3d 1374 (11th Cir. 1997).

11

a reasonable juror could find that Messick closed the loan without obtaining the option (or failed to resubmit the loan to the Bank's lending committee without the requirement that the option be assigned to the Bank) because he did not want to cause problems for Brivik and U.S. Lending. In addition, given that Messick had direct knowledge about River Meadows Development, LLC's plan to create a subdivision anchored by the 25 waterfront acres, the record contains evidence from which a reasonable juror could find that Messick neglected his duties as counsel by failing to explain the importance of the 25-acre parcel that was not available, and the impact that had on the proposed development, even if the Bank did not specifically ask Messick about it.

### B. Breach of Fiduciary Duty

In addition, a reasonable juror could determine that, when Messick should have had the Bank's best interest in mind, he was actually acting at the behest of other entities (all unbeknownst to the Bank), constituting a breach of fiduciary duty.

In 2006, when Messick undertook his representation of the Bank, Rule 4-1.7 of the Rules Governing the Florida Bar stated in relevant part:

> (a) **Representing Adverse Interests**. A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibility to and relationship with the other client; and
> (2) each client consents after consultation.
> (b) **Duty to Avoid Limitation on Independent Professional Judgment**. A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless;
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation.
> (c) **Explanation to Clients**. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Fla. Rule of Professional Conduct 4-1.7 (2006).

In attempting to secure a conflict waiver from the Bank, Messick was required to outline the risks associated with his conflicted representation and to explain that the Bank was not required to waive the conflict. See The Fla. Bar v. Dunagan, 731 So.2d 1237, 1241 (Fla. 1999)(consent after consultation requires that the attorney clearly advise his clients of their rights and the possible prejudice due to the conflict); Fla. Ins. Guar. Ass'n v. Carey Canada, Inc., 749 F. Supp. 255, 259 (S.D. Fla. 1990)("To satisfy the requirement of full

13

disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of that fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to withhold consent.").

Messick, as the attorney operating under a conflict that was purportedly waived, has not tendered an affidavit outlining the details of obtaining a waiver of the conflict of interest from the Bank. It is no easy task for the Court to piece together what actually transpired in this case, especially when certain of the deponents' statements are not uniform from one deposition to the next. Genuine issues of material fact abound concerning the content of Messick's purported disclosure of the conflict to the Bank and whether the Bank waived the conflict. Inconsistent

Messick has provided an incongruent account of the relevant facts in two separate depositions and in his responses to discovery.[7] Messick may have made a disclosure of

---

[7] The Court notes a party's prospects of winning on summary judgment are greatly diminished when that party provides internally inconsistent testimony regarding key facts.

14

his representation of River Meadows Development, LLC to the Bank. However, it appears that he did not disclose his representation (whether prior or concurrent) of Brivik and U.S. Lending. The Court cannot grant summary judgment in favor of Defendants on the murky record before the Court.

### C. Causation

In addition to the presence of material facts in dispute, the Court finds that this case calls for resolution by a jury because the issue of causation is a traditional jury question. This Court has determined that a reasonable juror could find that Defendants failed to close the multimillion dollar loan as specified in the Bank's CAR and that Defendants operated under a conflict of interest. A jury is best suited for determining whether these transgressions are what caused the loss.

Indeed, as stated in USA Interactive v. Dow Lohnes & Alberston, P.L.L.C., 328 F. Supp. 2d 1294, 1313 (M.D. Fla. 2004), "normally in negligence cases 'the determination of proximate cause is ordinarily a question that should be left for a jury.'" (Citing Gulfstream Park Racing Assoc. v. Gold Spur Table, Inc., 820 So. 2d 957, 960 (Fla. 4th DCA 2002)). "Where reasonable minds cannot differ, proximate cause becomes a question of law." Chipman v. Chonin, 597 So. 2d 363, 364

15

(Fla. 3d DCA 1992)(per curiam). That is not the case here. A jury, rather than this Court, is best suited for evaluating the facts and deciding whether the loss in question was proximately caused by Defendants. Accordingly, the Court denies the Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion for Summary Judgment (Doc. # 20) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of March, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record