UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
First Priority Bank, Bradenton,
Florida,

        Plaintiff,

v.                          Case No. 8:11-cv-2831-T-33MAP

ICARD, MERRILL, CULLIS, TIMM,
FUREN & GINSBURG, P.A., and
ROBERT MESSICK, ESQ.,

        Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to the FDIC's Motion in Limine to Bar All Evidence of an Alleged, Unrecorded Side Agreement Pertaining to First Priority Bank, Bradenton Florida's Written February 16, 2006 Loan Approval to River Meadows Development, LLC as a Defense (Doc. # 33), filed on April 8, 2013. Defendants filed a Response in Opposition to the Motion on April 24, 2013. For the reasons that follow, the Motion is denied.

## I.   Background

After River Meadows Development, LLC submitted a commercial loan application to First Priority Bank seeking $6.3 million, the Bank's Director's Committee held a meeting to review the application. (7/9/2012 Putnam Dep. Doc. # 22-2

at 165). On February 16, 2006, that Committee, comprised of seven members, approved a $5.3 million loan to River Meadows Development, LLC with certain conditions enumerated in the Bank's Credit Approval Request form (CAR). (Id.; Doc. # 33-2). One of the conditions stated in the CAR was the "assignment of the option contract to purchase an additional 25-acre parcel (Parcel 4) located just north of Parcels 1-3." (Doc. # 33-2). The minutes from the meeting also reflect that the loan collateral included "the assignment of the option contract to purchase an additional 25-acre parcel (Parcel 4) located just north of Parcels 1-3 and assignment of all plans, permits, and contracts." (Doc. # 33-1 at 5).

On February 17, 2006, the Bank requested that Robert Messick, Esq. of the Icard Merrill firm represent the Bank in closing the River Meadows Development, LLC loan, and  Messick agreed. (7/9/2012 Putnam Dep. Doc. # 22-2 at 116, 118). Messick omitted from the loan commitment letter the condition that the Bank receive the 25-acre option contract as a part of the loan collateral. (Doc. # 23-7).  Messick closed the loan on behalf of the Bank without obtaining the 25-acre option contract. Not long thereafter, the Bank failed, and the FDIC was appointed as the Receiver.

The FDIC sues Messick and the Icard Merrill firm for

2

legal malpractice and breach of fiduciary duty.  In defense of these tort claims, Defendants assert that the 25-acre option contract was not actually part of the collateral for the loan, and that the Bank was aware that there was not an option to purchase the property. (Doc. # 8 at 8).  Defendants have tendered to the Court numerous items of evidence in support of the proposition that the members of the Bank's lending committee did not consider the option to be an item of collateral.[1]  In addition, Defendants indicate that Messick orally advised Putnam that the option contract did not exist, and Putnam agreed that it was not an item of collateral. (6/19/2012 Messick Dep. Doc. # 22-5 at 75-76).

At this juncture, the FDIC seeks an Order barring Defendants from introducing "any documentary or testimonial evidence or mak[ing] any statement or comment at any time during the trial regarding the purported existence of the alleged unrecorded side agreement or scheme by which the

---

[1]  For instance, George Najmy testified during his deposition that the loan was not underwritten based upon an option contract or a purported option contract to acquire 25 acres of land. (Najmy Dep. Doc. # 22-1 at 46, 58).  Alan Zirkelbach similarly testified that he placed no weight on the existence of Parcel 4 in approving the loan. (Zirkelbach Doc. # 22-4 at 20).  Putnam testified that he did not ascribe any value to the 25-acre Parcel. (7/9/2012 Putnam Dep. Doc. # 22-2 at 145-146).

condition that the Borrower pledge in its interest in the 25-acre option contract as collateral for the Loan was purportedly waived, or alternatively, by which Messick was allegedly authorized to ignore this express written Loan condition in documenting and closing the Loan." (Doc. # 33 at 11-12).  The FDIC asserts that such evidence is barred by the application of the D'Oench doctrine and the parol evidence rule.

## II.  The D'Oench Doctrine

In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), a securities dealer who executed a demand note with a bank tried to prevent the FDIC, which had acquired the note, from enforcing it because of the securities dealer's side agreement with the bank that the note would not be called for payment. The Supreme Court rejected the securities dealers' defense and held secret agreements outside the documents contained in a bank's records would not operate as a defense against suit by the FDIC on a note acquired from a failed bank. Id. at 459.

The Court's reasoning, which has evolved into what is known as the D'Oench doctrine, was intended "to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities and other assets in the portfolios of the banks which [the FDIC] insures." Id. at

4

457.

12 U.S.C. § 1823(e) is the statutory counterpart to the

D'Oench doctrine and provides:

> Agreements against interests of Corporation.
> (1) In general.   No agreement which tends to
> diminish or defeat the interest of the Corporation
> in any asset acquired by it under this section or
> section 12 U.S.C. § 1821, either as security for a
> loan or by purchase or as receiver of any insured
> depository institution, shall be valid against the
> Corporation unless such agreement-
> (A) is in writing,
> (B) was executed by the depository institution and
> any person claiming an adverse interest thereunder,
> including the obligor, contemporaneously with the
> acquisition of the asset by the depository
> institution,
> (C) was approved by the board of directors of the
> depository institution or its loan committee, which
> approval shall be reflected in the minutes of said
> board committee, and
> (D) has been, continuously, from the time of its
> execution, an official record of the depository
> institution.

As described in Baumann v. Savers Fed. Sav. & Loan

Assoc., 934 F.2d 1506, 1515 (11th Cir. 1991), the "rule that

has emanated" from D'Oench and § 1823(e) is: "In a suit over

the enforcement of an agreement originally executed between an

insured depository institution and a private party, a private

party may not enforce against a federal deposit insurer any

obligation not specifically memorialized in a written document

such that the agency would be aware of the obligation when

conducting an examination of the institution's records."

5

The Defendants correctly point out that the present action is <u>not</u> a suit over the enforcement of an agreement against the FDIC.  Rather, the FDIC has asserted tort claims against former counsel of the failed bank.  Defendants also bring to the Court's attention several decisions in support of the proposition that "The FDIC is not entitled to special protection when it brings a tort claim against a third party on behalf of a defunct financial entity." <u>Resolution Trust Corp. v. Holland & Knight</u>, 832 F. Supp. 1532, 1539 (S.D. Fla. 1993)(citing <u>FDIC v. Ernst & Young</u>, 967 F.2d 166, 170 (5th Cir. 1992)).  Among other arguments, Defendants persuasively contend that it would not be fair for the FDIC to accuse counsel of negligently closing the loan and then preclude counsel from describing the facts and circumstances of the representation.  The Court agrees with Defendants.

The Eleventh Circuit has held that the <u>D'Oench</u> doctrine "applies in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records." <u>Murphy v. FDIC</u>, 208 F.3d 959, 963 (11th Cir. 2000)(citing <u>OPS Shopping Ctr., Inc. v. FDIC</u>, 992 F.2d 306, 308 (11th Cir. 1993)).  Nevertheless, the Court finds that the doctrine does not apply here because this suit is not even remotely about the

enforcement of a side agreement against the interest of the FDIC.  The D'Oench doctrine may be broad, but it is not limitless.

To be sure, the protections of the D'Oench doctrine serve an important function.  As explained in Langley v. FDIC, 484 U.S. 86 (1987), "one purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. . . . Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." Id. at 92.  The reliability of the failed Bank's records, however, is not implicated here, where the FDIC is suing counsel for malpractice and breach of fiduciary duty.

The issues for the jury to decide turn on whether counsel acted reasonably and ethically in representing the Bank.  It would not serve the purpose of the D'Oench doctrine to foreclose counsel's opportunity to describe what actions counsel undertook during the course of counsel's representation of the Bank, including the conversations counsel had with Bank employees.  Such conversations are not "unrecorded side agreements" and are thus not barred by the application of the D'Oench doctrine.  Furthermore, the

7

testimony of Bank employees regarding their recollections of what transpired during the loan approval process does not fall into the category of unrecorded side agreements.  Thus, the Motion is denied to the extent it seeks the application of the D'Oench doctrine to bar Defendants from offering evidence in support of their defense at trial.

**III. Parol Evidence Rule**

The Court also rejects the FDIC's argument that the evidence in question is barred by the parol evidence rule. That rule applies only to contracts. See Johnson Enters. of Jacksonville v. FPL Group, Inc., 162 F.3d 1290, 1309 (11th Cir. 1998)(The parol evidence "rule applies when the parties intend that a written contract incorporate their final and complete agreement."); Brown v. Fin. Serv. Corp., Int'l, 489 F.2d 144, 149 (5th Cir. 1974)("The parol evidence rule is a rule of the substantive law of contract, and its purpose is to preserve the sanctity of a written agreement once it is determined that the writing fully states the agreement of the parties.").[2]  "If no contract has been made, the parol evidence rule has no application." Coleman v. Brooks, 113 So.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, as binding precedent.

2d 590, 592 (Fla. 2d DCA 1959)(internal citation omitted).

Neither the CAR nor the unsigned minutes are a contract, and this case is not one in which any party is seeking to enforce the terms of the loan as reflected in the CAR or the minutes. Furthermore, even assuming *arguendo* that one or both of the documents was a contract, the parol evidence rule would not apply to bar the admission of post-contract formation evidence. As explained in Pavolini v. Williams, 915 So. 2d 251, 254 (Fla. 5th DCA 2005), "The parol evidence rule applies to verbal agreements between the parties to a written contract which are made before or at the time of execution of the contract. It does not apply to the admission of subsequent oral agreements that alter, modify, or change the former existing agreement between the parties." See also The Race, Inc. v. Lake & River Recreational Props., Inc., 573 So. 2d 409, 411 (Fla. 1st DCA 1991)("And the parol evidence rule has been specifically held to be inapplicable to oral agreements made subsequent to the execution of a promissory note . . .").

After finding that the D'Oench doctrine and the parol evidence rule are inapplicable, the Court denies the Motion in Limine.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

9

The FDIC's Motion in Limine to Bar All Evidence of an Alleged, Unrecorded Side Agreement Pertaining to First Priority Bank, Bradenton Florida's Written February 16, 2006 Loan Approval to River Meadows Development, LLC as a Defense (Doc. # 33) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>3rd</u> day of May, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record